UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EVA MOORE and BROOKE SHAW,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

MITZI JOHANKNECHT, in her official
capacity as KING COUNTY SHERIFF,

Defendant.

C16-1123 TSZ

ORDER

THIS MATTER comes before the Court on plaintiffs' motion for summary judgment, docket no. 70, and defendant's motion for summary judgment, docket no. 81. Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following Order.

**Background**

Plaintiffs Eva Moore and Brooke Shaw challenge the constitutionality of a provision of Washington's Residential Landlord-Tenant Act ("RLTA"), namely RCW 59.18.375. Plaintiffs contend that RCW 59.18.375 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution, as well as Article I,

ORDER - 1

Section 3 of the Washington State Constitution,[1] because it (i) prescribes a form of notice that does not provide residential tenants with comprehensive information about their rights, and (ii) allows writs of restitution to be issued in favor of landlords without a hearing.

In July 2016, plaintiffs initiated this suit in King County Superior Court against former King County Sheriff John Urquhart. *See* Compl. (docket no. 2-1). Less than two weeks later, plaintiffs added class allegations,[2] Am. Compl. (docket no. 1-1), and the case was then removed to this Court, *see* Notice of Removal (docket no. 1). In December 2016, the Court granted Urquhart's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the ground that he was not an appropriate defendant. *See* Order (docket no. 45). While plaintiffs' appeal from this ruling was pending before the Ninth Circuit, King County Sheriff Mitzi Johanknecht was elected and assumed office. In August 2018, the Ninth Circuit reversed and held that plaintiffs may maintain this action against the Sheriff and seek declaratory and injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *See Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018).

---

[1] The Washington State Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3. Plaintiffs do not assert that Article I, Section 3 provides greater due process protections than its federal counterpart, and thus, the Court does not address any contention that, to the extent RCW 59.18.375 passes muster under the Fourteenth Amendment, it nevertheless violates the Washington State Constitution. *See State v. Jordan*, 180 Wn.2d 456, 462, 325 P.3d 181 (2014) (indicating that Article I, Section 3 has been treated as coextensive with the Due Process Clause of the Fourteenth Amendment); *see also State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[2] For strategic and/or financial reasons, plaintiffs have opted not to pursue certification of a class. *See* Plas.' Mot. at 7:16-19 (docket no. 70).

ORDER - 2

On remand, plaintiffs moved for summary judgment, docket no. 70, arguing that RCW 59.18.375 is unconstitutional as a matter of law. The case was stayed when the Sheriff petitioned to the United States Supreme Court for a writ of certiorari. Minute Order (docket no. 77). The petition was denied on May 20, 2019, see Joint Status Report (docket no. 78), but by then, the Washington Legislature had enacted sweeping changes to the RLTA. See Laws of 2019, ch. 356 (Engrossed Substitute Senate Bill 5600). In late June 2019, the Court directed the parties to file a Joint Status Report addressing whether the amendments to the RLTA rendered moot any of the issues raised by plaintiffs in this case; however, the earlier stay remained in place. See Minute Order (docket no. 79). The parties timely submitted a Joint Status Report and articulated opposite views concerning the effects of the recent legislation. See Joint Status Report (docket no. 80). On July 28, 2019, the revisions to the RLTA became effective. Shortly thereafter, despite the stay, the Sheriff filed a motion for summary judgment, docket no. 81, contending that the Court lacks Article III ("case or controversy") jurisdiction and that plaintiffs do not have standing to challenge either the previous or the current statutory scheme. The Court hereby LIFTS the stay and considers the pending motions.

**Discussion**

**A.     Applicable Standards**

The Court treats the Sheriff's motion for summary judgment as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 913 (9th Cir. 1989) ("Summary judgment is an inappropriate disposition when the district court lacks jurisdiction."); *see also Foster v.*

1 *Carson*, 347 F.3d 742 (9th Cir. 2003) (holding that a moot claim must be dismissed for lack of jurisdiction). A Rule 12(b)(1) challenge may take the form of either (i) a "facial" attack, which accepts the truth of the allegations in the complaint, but contends that they are insufficient "on their face" to establish jurisdiction; or (ii) a "factual" attack, which contests the plaintiff's assertions, perhaps by introducing evidence outside the pleadings. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In deciding a Rule 12(b)(1) motion, the Court may resolve factual disputes so long as they are not "intertwined" with the merits of the plaintiff's claims. *Id.* at 1121-22 & n.3.

In contrast, in ruling on a motion for summary judgment, the Court may not decide any genuine disputes of material fact. *See* Fed. R. Civ. P. 56(a). Rather, the Court must "believe" the non-moving party's "affirmative evidence" and favorably draw therefrom all "justifiable inferences." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986). In this matter, because plaintiffs are the ones seeking summary judgment, they bear the burden of demonstrating the absence of factual issues. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. With respect to plaintiffs' motion under Rule 56, the question before the Court is whether the record, taken as a whole, could lead a rational trier of fact to find for the Sheriff and reject the notion that RCW 59.18.375 violates the Due Process Clause of the Fourteenth Amendment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322. If so, then summary judgment is not warranted, and the matter must proceed to trial.

## B. Residential Landlord-Tenant Act

Under Washington law, tenants of real property for terms less than life are liable for "unlawful detainer" if they engage in the conduct described in RCW 59.12.030, which includes continuing in possession of the property after nonpayment of rent[3] and failing to timely comply with a properly served, written notice to pay or surrender the premises.[4] RCW 59.12.030(3). Prior to July 28, 2019, the cure (pay or vacate) period was three (3) days after service of the notice for all types of properties. *Id.* (2018). In connection with the recent amendments to the RLTA, the cure period for residential tenants was increased to fourteen (14) days after service of the notice.[5] *Id.* (2019); *see* Laws of 2019, ch. 356, § 2. If a tenant remains in possession of the property after the cure period expires, the

---

[3] As a result of Senate Bill 5600, the term "rent" is now defined, for purposes of the RLTA, as the "recurring and periodic charges identified in the rental agreement for the use and occupancy of the premises, which may include charges for utilities." RCW 59.18.030(28). The term "rent" does not encompass charges for late payments, deposits, damages, attorney's fees, legal costs, or other nonrecurring amounts. *See id.*

[4] Other actions constituting "unlawful detainer" are continuing in possession of the premises after (i) expiration of a lease; (ii) the end of a monthly or periodic term if the landlord has given 20 days' notice to vacate; (iii) failing to cure a breach of a covenant of the lease within ten days of a written notice; (iv) failing to quit within three days following notice concerning a waste, nuisance, or unlawful business on the property; (v) trespassing and refusing to vacate after three days' written notice; and (vi) committing or permitting gang-related activity on the premises. RCW 59.12.030(1), (2), & (4)-(7).

[5] The new legislation also adopted a form of a 14-day notice to pay or vacate the premises. *See* Laws of 2019, ch. 356, § 3. The 14-day notice must (i) itemize the amounts due in rent, utilities, and/or other recurring charges, (ii) advise the tenant that failure to pay or vacate within fourteen days after service might lead to eviction via a judicial proceeding, and (iii) provide the following information:

> **The Washington state Office of the Attorney General has this notice in multiple languages on its web site. You will also find information there on how to find a lawyer or advocate at low or no cost and any available resources to help you pay your rent. Alternatively, call 2-1-1 to learn about these services.**

RCW 59.18.057(1) (emphasis in original).

ORDER - 5

landlord may commence proceedings to evict the tenant. 17 William B. Stoebuck & John W. Weaver, WASH. PRAC., Real Estate §§ 6.80 & 6.81 (2d ed. 2004) [hereinafter "Stoebuck"].

With respect to residential properties, the RLTA specifies the form of summons that must be served on a tenant in connection with an unlawful detainer matter. *See* RCW 59.18.365. The form of summons was substantially modified in 2019. *See* Laws of 2019, ch. 356, § 9. Before the recent amendments took effect, a summons was required to state, directly under the caption, "THIS IS NOTICE OF A LAWSUIT TO EVICT YOU," to recite the deadline for a response and the tenant's name and address, and to explain as follows:

> This is a notice of a lawsuit to evict you from the property which you are renting. Your landlord is asking the court to terminate your tenancy, direct the sheriff to remove you and your belongings from the property, enter a money judgment against you for unpaid rent and/or damages for your use of the property, and for court costs and attorneys' fees.

RCW 59.18.365 (2018). With the passage of Senate Bill 5600, the form of summons now begins "THIS IS AN IMPORTANT LEGAL DOCUMENT TO EVICT YOU," and after setting forth the deadline for a response, it reads:

> **GET HELP: If you do not respond by the deadline above, you will lose your right to defend yourself in court and could be evicted.** If you cannot afford a lawyer, you may call 2-1-1. They can refer you to free or low-cost legal help. They can help you find help to pay for a lawyer.

RCW 59.18.365 (2019) (emphasis in original).

The revised form informs tenants that "phone calls" to their landlords are not considered a "response" to the summons, that a "response" instead consists of a "notice of appearance" including the tenant's contact information, and that a notice of appearance

ORDER - 6

must be provided to the landlord or the landlord's attorney and, if the case has been filed, to the clerk of the court. *Id.* The summons then indicates that, if the tenant responds, he or she "will be notified of your hearing date in a document called an 'Order to Show Cause.'" *Id.* It further warns:

> If you get notice of a hearing, **you must go to the hearing.** If you do not show up, your landlord can evict you.

*Id.* (emphasis in original).

The RLTA sets forth two ways through which a landlord may obtain, in advance of trial, a writ of restitution that directs a sheriff to restore possession of the property to the landlord. *See* Stoebuck at § 6.81; *see also* RCW 59.18.370 & .375. The first method applies with respect to all grounds constituting unlawful detainer (*see supra* note 4); the second procedure may be used only when nonpayment of rent is the landlord's asserted basis for relief. *See* Stoebuck at § 6.81. The first method involves applying to a state court, at the time when a complaint alleging unlawful detainer is filed or thereafter, for an order directing the tenant to show cause why a writ of restitution should not be issued. *See* RCW 59.18.370. The show cause order must be served on the tenant, along with a summons and a copy of the complaint, if not previously served. *Id.* The show cause hearing must be scheduled for not less than seven (7) and not more than thirty (30) days after the date of service on the tenant of the show cause order. *Id.* The first procedure for securing a prejudgment writ of restitution requires the landlord to post a bond in an amount set by the court. RCW 59.18.380. If the unlawful detainer action is premised on nonpayment of rent, the tenant may stay execution of any writ of restitution by paying the

ORDER - 7

rent in arrears and continuing to pay rent on a monthly basis pending final judgment. *Id.*; *see also* Stoebuck at § 6.81.

The second method for procuring a pretrial writ of restitution requires the landlord to file a summons and complaint with the appropriate superior court and to deliver to the tenant a separate notice in the form set forth in RCW 59.18.375. *See* RCW 59.18.375(7). Such stand-alone notice must be captioned as "PAYMENT OR SWORN STATEMENT REQUIREMENT" and must advise that, by the deadline set forth, which must be at least seven (7) days after service of the notice, the tenant must either pay rent into the court registry or file a sworn statement that he or she does not owe the rent at issue. *Id.* The "payment or statement" notice is statutorily required to further indicate:

> IF YOU FAIL TO DO ONE OF THE ABOVE ON OR BEFORE THE DEADLINE DATE, THE SHERIFF COULD EVICT YOU WITHOUT A HEARING EVEN IF YOU HAVE ALSO RECEIVED A NOTICE THAT A HEARING HAS BEEN SCHEDULED.

*Id.* The deadline for paying rent or filing a sworn statement denying liability for rent may not precede the deadline for responding to the summons in the related unlawful detainer action. RCW 59.18.375(3).

The statute authorizes the "immediate issuance of a writ of restitution without further notice" to the tenant, and without bond, if the tenant does not timely comply with the payment or statement requirement. RCW 59.18.375(4). After a writ of restitution is issued, however, a tenant may seek a hearing, and may obtain a stay of the writ, on such prior notice to the landlord as the court deems appropriate, if the tenant makes an offer of proof that the landlord is not entitled to possession of the property based on a legal or equitable defense "arising out of the tenancy." *Id.* The form of notice set forth in

ORDER - 8

RCW 59.18.375 does not contain any discussion about a tenant's right to request, or the procedure for requesting, a hearing and/or a stay of a writ of restitution. Plaintiffs challenge the constitutionality of the second method for securing a prejudgment writ of restitution on the grounds that (i) the required notice is deficient, and (ii) the absence of a "pre-deprivation" hearing violates the Due Process Clause of the Fourteenth Amendment.

In arguing that plaintiffs' claims are now moot, the Sheriff has focused *inter alia* on the "post-deprivation" procedures added to the RLTA in 2019. The new provision cited by the Sheriff reads:

> Following the entry of a judgment in favor of the landlord and against the tenant for the restitution of the premises and forfeiture of the tenancy due to nonpayment of rent, the court, at the time of the show cause hearing or trial, or upon subsequent motion of the tenant but before the execution of the writ of restitution, may stay the writ of restitution upon good cause and on such terms that the court deems fair and just for both parties. In making this decision, the court shall consider evidence of the following factors:
>
> (i) The tenant's willful or intentional default or intentional failure to pay rent;
>
> (ii) Whether nonpayment of the rent was caused by exigent circumstances that were beyond the tenant's control and that are not likely to recur;
>
> (iii) The tenant's ability to timely pay the judgment;
>
> (iv) The tenant's payment history;
>
> (v) Whether the tenant is otherwise in substantial compliance with the rental agreement;
>
> (vi) Hardship on the tenant if evicted; and
>
> (vii) Conduct related to other notices served within the last six months.

Laws of 2019, ch. 356, § 7 (codified as RCW 59.18.410(3)(a)). If a tenant seeks relief under this provision, the state court considering the application must make a finding concerning whether the tenant is low-income, limited resourced, or experiencing hardship

ORDER - 9

and, if so, the court may order that the landlord is eligible to receive a disbursement from the landlord mitigation program account administered by Washington's Department of Commerce pursuant to RCW 43.31.605. RCW 59.18.410(3)(e)(i)&(ii).

C. **Mootness**

Article III of the Constitution limits the Court's jurisdiction to "Cases" and "Controversies." U.S. CONST., art. III, § 2. The "case or controversy" requirement applies at "all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). The Sheriff contends that plaintiffs' challenge to the constitutionality of RCW 59.18.375 no longer presents a case or controversy because other provisions of the RLTA have been significantly altered or recently added. In *Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019), an en banc panel of the Ninth Circuit recently clarified that a presumption of mootness arises from the repeal, amendment, or expiration of challenged legislation, but such presumption may be rebutted by a showing of a "reasonable expectation," founded on the record, that the legislative body will "reenact the challenged provision or one similar to it." *Id.* at 1198-99. In this case, the Sheriff cannot rely on a presumption of mootness, and plaintiffs need not establish a likelihood of reenactment, because the challenged provision of the statute was not repealed or amended and did not expire when Senate Bill 5600 was enacted.

Despite the passage of legislation designed to effectuate Washington's public policy of assisting "residents who are experiencing a temporary crisis in retaining stable housing" and intended to provide tenants "additional time to access resources that allow

ORDER - 10

1 [them] to stay in their home[s]," *see* Laws of 2019, ch. 356, § 1, no change was made to

2 RCW 59.18.375, and landlords may continue to use the alternative approach set forth

3 therein to obtain a prejudgment writ of restitution.  Thus, the controversy concerning the

4 constitutionality of RCW 59.18.375 is still very much alive.  The Sheriff's request to

5 dismiss this matter on the ground of mootness is DENIED.

**D.     Standing**

In addition to presenting a case or controversy, plaintiffs must have standing to sue.  *See* <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case.").  The "irreducible constitutional minimum of standing" consists of (i) an alleged "injury in fact" that is "concrete" and "actual or imminent," not conjectural or hypothetical, (ii) a causal connection between such alleged injury and the challenged conduct of the defendant, and (iii) a likelihood that the requested relief will redress the alleged injury. <u>Id.</u> at 102-03.  Plaintiffs, as the parties attempting to invoke the jurisdiction of the Court, bear the burden of establishing the triad of injury in fact, causation, and redressability. <u>Id.</u> at 104.

Each element of standing must be supported in the manner and with the degree of evidence required at each successive stage of litigation.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  For example, at the pleading stage, general factual allegations suffice, but in response to a motion for summary judgment, facts admissible in evidence must be set forth in an affidavit or a declaration of someone with personal knowledge. *See* <u>id.</u>; *see also* Fed. R. Civ. P. 56(c)(4).  In this matter, in connection with plaintiffs'

appeal from the Court's ruling that the Sheriff was not the proper defendant, the Ninth Circuit held that plaintiffs "had standing to sue at the time they filed this action," but this decision rested merely on the factual recitations in the Amended Complaint. *See* 899 F.3d at 1099 (describing what plaintiffs "plausibly alleged"); *see also* Order at 2 n.1 (docket no. 45) (noting that former Sheriff Urquhart had submitted various documents associated with the underlying unlawful detainer actions, but declining to consider them because doing so might convert the pending Rule 12(c) motion into one for summary judgment). The Court is now faced with a dispositive motion pursuant to Rule 12(b)(1) with respect to which the Court may consider materials outside the pleadings and resolve factual disputes. *See Leite*, 749 F.3d at 1121-22 & n.3.

Consistent with the former definition of "unlawful detainer," Eva Moore and Brooke Shaw were served on May 6, 2016, with a three-day notice to pay or vacate. *See* Ex. 5 to Hackett Decl. (docket no. 75 at 64-65); *see also* RCW 59.12.030(3) (the current law requires a 14-day notice). On May 23, 2016, their landlord, American Management Services Northwest, L.L.C. ("AMSN"), initiated an unlawful detainer action, naming Moore and Shaw as defendants in a lawsuit different from the one now pending before the Court. Ex. 2 to Hackett Decl. (docket no. 75 at 44-45). On May 27, 2016, in connection with AMSN's unlawful detainer action, Moore and Shaw were served with a summons, a copy of the complaint, and an RCW 59.18.375 "payment or statement" notice. Ex. 5 to Hackett Decl. (docket no. 75 at 58-59). The deadline for response set forth in both the summons and the "payment or statement" notice was June 6, 2016. Ex. 3 to Hackett Decl. (docket no. 75 at 48 & 50).

On June 6, 2016, Moore and Shaw filed, in the unlawful detainer proceedings, a written response, requesting a hearing and explaining that, in February 2016, Moore had fallen on an unstable landing in the apartment rented from AMSN and broken her ankle, causing her to be off work for 90 days. <u>See</u> Ex. 6 to Hackett Decl. (docket no. 75 at 69-70). Despite this timely submission, on June 20, 2016, AMSN obtained a writ of restitution, which set an eviction date of June 28, 2016. <u>See</u> Exs. 8 & 9 to Hackett Decl. (docket no. 75 at 78 & 81). In its order directing the clerk to issue the writ of restitution, the King County Superior Court made no mention of the letter that Moore and Shaw had filed on June 6, 2016, and the related materials do not indicate whether the state court (i) was simply unaware of or otherwise ignored the filing, (ii) believed the submission was deficient because it was not sworn, or (iii) concluded on the merits that Moore and Shaw had no defense concerning the nonpayment of rent. In other words, whether the writ of restitution was issued in violation of, or in accordance with, RCW 59.18.375 cannot be determined from the record, and whether plaintiffs now raise an "as applied" or "facial" challenge remains unclear.

On June 27, 2016, on a motion brought by Moore and Shaw, <u>see</u> Ex. 10 (docket no. 75 at 85-87), the state court stayed execution of the writ of restitution and set a show cause hearing for June 30, 2016. Ex. 11 to Hackett Decl. (docket no. 75 at 89-90). The stay remained in effect through two continuances of the show cause hearing. <u>See</u> Ex. 13 to Hackett Decl. (docket no. 75 at 101-02). On July 21, 2016, the writ of restitution expired by its own terms without having been executed. <u>See</u> Ex. 9 to Hackett Decl. (docket no. 75 at 80). On July 28, 2016, a certificate of settlement was filed in the

unlawful detainer action. <u>See</u> Ex. 14 to Hackett Decl. (docket no. 75 at 104-05). To this day, plaintiffs are still AMSN's tenants.

Plaintiffs did not have standing when they instituted this lawsuit on July 5, 2016. Prior to that date, the writ of restitution had been stayed by the state court presiding over the unlawful detainer action. Plaintiffs did not disclose this fact in their Complaint, <u>see</u> Ex. A to Verification of State Court Records (docket no. 2-1 at 4-7), and this information was not considered by the Ninth Circuit when it concluded that plaintiffs had standing, <u>see</u> 899 F.3d at 1099 (indicating merely that the writ of restitution had been served on plaintiffs, but had not been executed, and had not yet expired when plaintiffs commenced this action). Because the writ of restitution had been stayed before plaintiffs began this separate litigation against the Sheriff, plaintiffs could not, at the time they initiated these proceedings, establish a "concrete" and "actual or imminent" injury in fact. The stay had no expiration date, <u>see</u> Ex. 11 to Hackett Decl. (docket no. 75 at 89-90), and in the absence of another order lifting the stay or directing execution of the writ of restitution, plaintiffs faced no real risk of being evicted from their home. Moreover, because the stay was never lifted and the writ of restitution expired before the Sheriff took any steps to evict plaintiffs, plaintiffs cannot carry their burden of linking an injury to the Sheriff's conduct or to the allegedly unconstitutional statute.

With respect to the reconstituted RLTA, which is now in effect, plaintiffs have no colorable argument that they have standing. They have never been served with the new 14-day "pay or vacate" notice or the revised form of summons. Moreover, since the effective date of Senate Bill 5600, plaintiffs have not been subjected to the "payment or

statement" notice or procedures set forth in RCW 59.18.375.  Finally, plaintiffs have not had occasion to seek the "post-deprivation" relief made available under the amended statute.  Plaintiffs are simply not, at this time, in a position to test, in a "definite and concrete," as opposed to hypothetical, manner, whether RCW 59.18.375, within the context of the current RLTA, comports with due process requirements.  Plaintiffs might, however, in the future, again find themselves on the eve of eviction, *see Moore*, 899 F.3d at 1100, and thus, the Sheriff's request for summary judgment and/or dismissal with prejudice cannot be granted.  Instead, plaintiffs' claims will be DISMISSED **without** prejudice for lack of standing (and concomitantly, an absence of jurisdiction) pursuant to Rule 12(b)(1).

**E.    Due Process**

Even if the Court had jurisdiction in this matter, it could not grant plaintiffs' motion for summary judgment.  The issues of whether (i) the form of notice required by RCW 59.18.375 and/or (ii) the grant of a writ of restitution without a hearing violate the Due Process Clause of the Fourteenth Amendment involve factual questions that preclude summary judgment.  In attacking the adequacy of the notice outlined in RCW 59.18.375, plaintiffs rely on *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), which observes that

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Id.* at 314.  In *Mullane*, the Supreme Court found constitutionally defective a scheme by which the only notice given to beneficiaries of a common trust fund concerning the

ORDER - 15

1 trustee's petition for judicial settlement of its account was via newspaper publication of
2 merely the name and address of the trustee, the name and date of establishment of the
3 common trust fund, and a list of participating estates, trusts, or funds. <u>Id.</u> at 309-10. The
4 <u>Mullane</u> Court viewed the uninformative notice by publication as "a mere gesture [that]
5 is not due process." <u>Id.</u> at 315.

6       The notice challenged by plaintiffs in this case bears no resemblance to the notice
7 invalidated in <u>Mullane</u>. Unlike in <u>Mullane</u>, the notice was not printed in a newspaper for
8 plaintiffs to discover by happenstance, but rather was, with the state court's prior
9 approval, posted on the front door of the apartment they rented from AMSN and sent to
10 them via both regular and certified mail. <u>See</u> Exs. 4 & 5 to Hackett Decl. (docket no. 75
11 at 55-56 & 58-59); <u>see also</u> RCW 59.18.055 (authorizing posting on the premises
12 combined with mailing as an alternative when personal service could not be effected
13 through the exercise of due diligence); Laws of 2019, ch. 356, § 11 (eliminating the
14 requirement that a court pre-approve the use of alternative service). As evidenced by the
15 letter plaintiffs timely filed in response, plaintiffs received the notice (and summons), and
16 they do not appear to dispute that the notice was "reasonably calculated, under all the
17 circumstances," to reach them and inform them of the landlord's efforts to recover the
18 overdue rent. <u>See Mullane</u>, 339 U.S. at 314.

19       Instead of challenging the manner of providing notice, plaintiffs contend that the
20 content of the notice set forth in RCW 59.18.375 is unconstitutionally confusing and/or
21 misleading. Plaintiffs assert that the notice is confusing and/or misleading because it
22 does not inform tenants of the right to request a hearing and "implies" that no right to a
23

hearing exists.  *See* Plas.' Mot. at 11 (docket no. 70).  Indeed, the notice warns: "THE SHERIFF COULD EVICT YOU WITHOUT A HEARING."  *See* RCW 59.18.375(7)(f).  Plaintiffs, however, were not themselves dissuaded, having in fact asked for a hearing in the letter they filed in King County Superior Court on June 6, 2016.  Moreover, the notice's advisement that a writ of restitution could issue without a hearing is accurate.[6]  Thus, plaintiffs' challenge does not really concern the form of the notice, but rather the statutory scheme described in the notice and outlined in RCW 59.18.375, which does not contemplate any "pre-deprivation" hearing, if the issuance (as opposed to the execution) of a writ of restitution is considered a "deprivation."

Although the Sheriff has opted not to take a position on the merits,[7] *see* Resp. at 1 (docket no. 74), plaintiffs' contention that a "pre-deprivation" hearing is required by *Mathews v. Eldridge*, 424 U.S. 319 (1976), could not be decided without a trial.  *See Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013) (Rule 56 prohibits the grant of summary judgment by "default" even if the opposing party completely fails to

---

[6] Given this record, the Court could not conclude, as a matter of law, that the statutory notice is unconstitutionally confusing and/or misleading.  Regardless of which approach is used to obtain a pretrial writ of restitution, the tenant must receive from the landlord, either contemporaneously with or in advance of either a show cause order (first method) or a "payment or statement" notice (second procedure), the statutorily mandated form of summons, which was completely rewritten earlier this year by Senate Bill 5600.  The language of the new summons must be considered in evaluating whether the notice required by RCW 59.18.375 is deficient.  Having not themselves been served with a summons and a "payment or statement" notice under the revised RLTA, plaintiffs raise merely hypothetical, non-justiciable questions concerning the sufficiency of the notice set forth in RCW 59.18.375.

[7] The parties have not briefed, and the Court does not address, the immunity from "all civil liability for serving and enforcing writs of restitution" that is statutorily granted to the Sheriff.  *See* RCW 59.18.390(1).

ORDER - 17

respond).  Under *Mathews*, in evaluating whether due process has been satisfied, the following factors must be weighed:  (i) the nature of the private interest affected by the government action; (ii) the risk of erroneous deprivation of such interest through the procedures used, as well as the probable value of additional or substitute safeguards; and (iii) the interest of the government, including the fiscal or administrative burdens that additional or different procedural requirements would entail.  424 U.S. at 335.  In this matter, the *Mathews* analysis is nearly impossible to perform because the Sheriff is in no position to provide the necessary factual material; the various superior courts would have more incentive to articulate the potential burdens of additional procedural safeguards and better access to meaningful data.

In addition, the manner in which the term "deprivation" is defined affects the result of the *Mathews* balancing.  Although plaintiffs suggest that *issuance* of a writ of restitution is a "deprivation," the *execution* of a writ of restitution is more appropriately considered the "deprivation" to which the *Mathews* inquiry should be applied. RCW 59.18.375 allows a tenant to seek an immediate stay of a writ of restitution by stating a legal or equitable defense to eviction.  *See* RCW 59.18.375(4).  The 2019 amendments to the RLTA increased the waiting period between *issuance* and *execution* of a writ of restitution, *see* Laws of 2019, ch. 356, § 7 (prohibiting the Sheriff from evicting a tenant, for nonpayment of rent, for "five *court* days" after issuance of a writ of restitution (emphasized text added by Senate Bill 5600)), and set forth new procedures and factors to be considered by a court in deciding whether to stay execution of a writ of restitution, *see* RCW 59.18.410(3)(a).  If *execution* of a writ of restitution (*i.e.*, eviction)

is the "deprivation" of import, then both the terms of the challenged provision and the recent revisions to the RLTA undermine plaintiffs' claim that RCW 59.18.375 violates due process by failing to offer a "pre-deprivation" hearing.

Even if the *issuance* of a writ of restitution itself constitutes a "deprivation" of constitutional magnitude, the availability of "post-deprivation" relief, as improved by the recent revisions to the RLTA, presents factual questions concerning (i) the risks of erroneous *executions* of writs of restitution (*i.e.*, evictions), and (ii) the fiscal and administrative burdens to the State's courts that would be associated with (a) conducting a hearing in advance of the *issuance* of every writ of restitution, (b) providing notice of available "post-deprivation" remedies along with every writ of restitution, or (c) other additional or substitute safeguards. Given these issues, plaintiffs have not made the requisite showing that, to the extent they have standing, they are entitled to judgment as a matter of law.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The stay imposed by Minute Order entered April 9, 2019, docket no. 77, is LIFTED;

(2) Plaintiffs' motion for summary judgment, docket no. 70, is DENIED;

(3) Defendant's motion for summary judgment, docket no. 81, is treated as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and is DENIED in part as to mootness, and GRANTED in part as to plaintiffs' lack of standing;

(4) Plaintiffs' claims are DISMISSED without prejudice;

(5) This Order constitutes a final decision of the Court within the meaning of Federal Rule of Appellate Procedure 4(a)(7)(A)(i), and no judgment will be entered given the absence of Article III jurisdiction;

(6) The Clerk is directed to send a copy of this Order to all counsel of record and to CLOSE this case.

IT IS SO ORDERED.

Dated this 20th day of December, 2019.

Thomas S. Zilly
United States District Judge

ORDER - 20